## SHASTA COUNTY v. MOUNTAIN COPPER CO., Limited.*

(Circuit Court of Appeals, Ninth Circuit. January 9, 1922. Rehearing Denied February 20, 1922.)

No. 3760.

**Taxation ⬅485(4)—Increase of assessment by board of equalization in disregard of the evidence held invalid.**

Under Pol. Code Cal. §§ 3673, 3679, relative to increases of assessments by boards of equalization, where the only evidence before the board was to the effect that the assessors had valued mining property at its full value, but the board arrived at a higher value by the adoption of a formula respecting the value of the ore, without receiving any evidence as to the cost of extracting, reducing, and marketing the ore, the increase was invalid.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Frank H. Rudkin, Judge.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 258 U. S. —, 42 Sup. Ct. 462, 463, 66 L. Ed. —.

Suit by the Mountain Copper Company, Limited, against Shasta County. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 278 Fed. 158.

This and two other actions involve like questions and can be generally considered in this one opinion. In two of these three actions the Mountain Copper Company sought to recover portions of taxes paid under protest to the county of Shasta, Cal., for the fiscal year ending June 30, 1920, and in the other the Balaklala Consolidated Copper Company sought to recover for taxes paid by it. It is alleged that the county assessor put a value of $125,000 upon the real property of the Mountain Copper Company and $180,000, upon the property of the Balaklala Company; that these values were 50 per cent. of full cash values, made in pursuance of a custom to value all property at 50 per cent. of its real value; that the board of supervisors of Shasta county, sitting as a board of equalization, cited the corporations to appear and show cause why the assessments upon their respective properties should not be increased; that the companies appeared with counsel and officials, and presented evidence that the values were not in excess of those fixed by the assessor, but that the board, without receiving evidence to the contrary, arbitrarily and illegally fixed the valuation of the property of the Mountain Copper Company at $549,000, and that of the Balaklala Consolidated at $327,700; that the board, in increasing the valuation, acted fraudulently and capriciously, and without sufficient or any evidence to justify such increases.

The District Court held that the equalization as made was void and that the plaintiffs were entitled to recover all taxes paid on valuations in excess of those put upon the property by the assessor, and judgment was rendered in favor of plaintiffs for all taxes paid on valuations in excess of sums assessed by the assessor.

Jesse W. Carter, Dist. Atty., of Redding, Cal., and Morrison, Dunne & Brobeck, of San Francisco, Cal. (Edward Hohfeld, of San Francisco, Cal., of counsel), for plaintiff in error.

C. W. Durbrow, of San Francisco, Cal., and W. D. Tillotson, of Redding, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). The method which the board of equalization pursued was explained by the county auditor, who said that the board gave to him the following figures for the mines which belonged to the Mountain Copper Company: Mineral contents, 2.3 per cent. copper, which means 46 pounds per ton, less 8 pounds, or 38 pounds net. At $.1798, $6.83 per ton, 268,000 tons, gives a value of $1,830,440; 30 per cent., $549,132. The assessed value is $549,000.

One of the supervisors testified that he did not think that the board took any evidence in connection with the formula or method adopted, to show what it would cost to extract, reduce, and market the ore; that the board discussed the matter, and knew that the general supposition was that the mine had produced large profits; and that the purpose was to use the same relative value as was placed on other properties all over the county. Another member said that the action of the board was based on the tonnage blocked out and the metal content, and the average price of copper and gold and silver during the preceding 10 years, and then taking 30 per cent. of that amount as

the assessed value, but that the board did not take any evidence to as-certain the exact cost of mining and reduction, or take into consideration the net value that might be in the ore after expenses of reduction and marketing were allowed. Witness said that the board acted on their own judgment in adopting 30 per cent. as the basis for assessment, and without evidence as to the value of the properties, except that of the general manager. The general manager testified positively that, while in years past the mine of the Mountain Copper Company had been profitable, in March, 1919, it was abandoned as exhausted. There was no contradiction of this evidence.

The power of the board of equalization, under section 3673 of the Political Code of California, is:

"After giving notice in such manner as it may by rule prescribe, to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said roll, and make the assessment conform to the true value of such property in money."

It appears that it was the custom of the county assessors of Shasta county to assess all property in the county so as not to exceed 50 per cent. of the value of such property, as indicated by usual and ordinary sales. By section 3679 the board must use the abstract and all other information it may gain, from the records or elsewhere, in equalizing assessments. But by the only evidence produced the Mountain Copper Company property was worth not to exceed $250,000, or an assessable valuation of $125,000. While there was some testimony that the board considered other matters, there can be no dispute that as a fact the board acted upon the formula stated, and without any justifiable showing put the value of the property at 30 per cent. of the value worked out under the formula.

The board may have meant to equalize justly, yet it is very plain that they adopted a method which had no substantial evidence to support it, and which appears to have worked gross injustice. In the evidence concerning the value of the Balaklala property before the board the tonnage was put at 112,500 tons as the total value of the ore, which, multiplied by 78 cents, gave approximately $80,000 as the value, and no other person, except the general manager, gave evidence of value.

In People v. Reynolds, 28 Cal. 112, the Supreme Court of California held that a board of equalization has no more right to add to the assessed value of property, without evidence authorizing them to do so, than a court or jury has to find fact and determine the rights of litigants without evidence. That view was approved in Oakland v. So. Pac. Co., 131 Cal. 229, 63 Pac. 371. In Los Angeles Gas & Elec. Co. v. County of Los Angeles, 162 Cal. 164, 121 Pac. 384, 9 A. L. R. 1277, the court, after stating the general rule that the conclusion of assessing officers when honestly arrived at, and when not made in pursuance of some fixed rule or general system, the result of which is necessarily discriminatory and inequitable, is conclusive on the courts, although erroneous, held that an assessment will be voided where the board has proceeded arbitrarily and in willful disregard of the law intended for their guidance and control, with the evident purpose of

imposing unequal burden upon certain taxpayers, or unless, or where, there is something equivalent to fraud in the action of the board. Greene v. Louisville & I. R. R. Co., 244 U. S. 499, 37 Sup. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88.

The cases are such that the board appears to have disregarded all evidence that the values were as fixed by the assessor, and without evidence to support their action increased the assessments involved to the great injury of the rights of the mining companies. The equalizations were therefore invalid, and it was properly so held.

Decrees affirmed.

