[Civ. No. 2818.    Third Appellate District.—December 30, 1924.]

## H. D. HALEY & CO. OF CALIFORNIA (a Corporation), Appellant, v. N. G. McVAY, as Auditor, etc., Respondent.

[1] FOREIGN CORPORATIONS — SERVICES PERFORMED UNDER CONTRACT WITH COUNTY—MANDAMUS—COMPLIANCE WITH CORPORATION LICENSE ACT—PLEADING—EVIDENCE—PRESUMPTIONS.—In a proceeding by the assignee of a foreign corporation to compel the auditor of a county to draw his warrant for services rendered by the foreign corporation to the county under contracts theretofore entered into between the latter two, notwithstanding that the Corporation License Act of 1917 as amended in 1921 provides that contracts executed by a foreign corporation, which has not complied with the statute as to doing business in this state, shall be void, the failure of plaintiff to allege and prove that such corporation had taken the required steps to authorize it to do business in this state is not a bar to a recovery by plaintiff, the presumption being "that the law has been obeyed."

[2] ID. — PLEADING—CAPACITY TO SUE.—An allegation of compliance with the statutory conditions for doing business is not necessary in a complaint by a foreign corporation. If it does not appear on the face of the complaint that plaintiff has not complied with the statute, such want of capacity to sue cannot be raised by demurrer.

[3] COUNTIES — TAXATION — CONTRACTS FOR CRUISE, ESTIMATE, AND CLASSIFICATION OF LANDS—POWER OF BOARD OF SUPERVISORS.—A board of supervisors, deeming that a classification of the patented timber and other lands subject to assessment and taxation in the county was necessary in order to enable the board to promptly perform its duties when sitting as a board of equalization, did not exceed its powers in entering into contracts with a private party which provided for a "cruise and estimate of all timber on such patented lands . . . as shall be hereafter designated" by the board, and for the "classification, topographical survey, and report of such patented lands . . . as shall be hereafter designated" by the board.

---

(1) 14a C. J., p. 1358, n. 78.    (2) 14a C. J., p. 1358, n. 78, p. 1363, n. 92 New.    (3) 15 C. J., p. 546, n. 54.

1. Necessity that complaint by foreign corporation allege compliance with domestic statutes, notes, 2 Ann. Cas. 1004; 13 Ann. Cas. 69. See, also, 12 R. C. L. 101; 7 Cal. Jur. 212.

2. Necessity of pleading specially noncompliance by foreign corporation with statutes of jurisdiction, note, 9 Ann. Cas. 492.

APPEAL from a judgment of the Superior Court of Del Norte County.   Warren V. Tryon, Judge.   Reversed.

The facts are stated in the opinion of the court.

R. L. Shinn and George W. Howe for Appellant.

James Davis for Respondent.

FINCH, P. J.—The board of supervisors of Del Norte County, by unanimous vote of the members thereof, adopted the following resolution: "It being deemed by this board of supervisors that a classification of the patented timber and other lands subject to assessment and taxation in Del Norte county is necessary in order to enable this board of supervisors to promptly perform its duties when sitting as a board of equalization, it is therefore ordered that the County of Del Norte this day enter into written agreements with H. D. Haley & Co. of Portland, Oregon, for the classification of such lands on the terms and conditions as set forth in said written agreements on file with this board which written agreements are hereby referred to, and considered a part of this order and motion; the chairman is authorized to sign for the board of supervisors of Del Norte County, Calif."

On the same day two contracts were duly executed, one providing for a "cruise and estimate of all timber on such patented lands . . . as shall be hereafter designated" by the board and the other for the "classification, topographical survey, and report of such patented lands . . . as shall be hereafter designated" by the board.

The company performed services in accordance with the terms of both contracts and its reports thereof "were used by such board as data for the equalization of taxes in said county, during the session of said board as a board of equalization in the month of July, 1923." The company filed claims for such services, which claims were duly allowed by the board. The contracting corporation thereafter assigned such claims to the petitioner herein, a corporation organized under the laws of this state. The county auditor refused to issue his warrants for the claims so allowed and this proceeding was then instituted to compel such issuance.

The court granted an alternative writ of mandate, which was duly served upon the auditor. The auditor did not file an answer, but the district attorney appeared for him at the hearing and resisted the application. Evidence was introduced in support of the application and, after argument by counsel for the respective parties, the court rendered judgment denying a peremptory writ. This appeal is from the judgment.

[1] The petition alleges that H. D. Haley & Company, the contracting corporation, is "a corporation duly organized and existing under and by virtue of the laws of the State of Oregon." It is not alleged, nor was any proof offered, to show that such corporation had taken the required steps to authorize it to do business in this state. Section 1 of the Corporation License Act of 1917 (Stats. 1917, p. 371), as amended in 1921 (Stats. 1921, pp. 638, 640), after prescribing a fine to be imposed upon a foreign corporation for doing business in the state without complying with the statute, provides: "In addition to the penalty herein provided every contract made by or on behalf of any such foreign corporation affecting the personal liability thereof or relating to property within the state shall be held void on its behalf and on behalf of its assigns, but shall be enforceable against it or them." Respondent contends that the judgment must be affirmed because of the failure to allege and prove that the contracting corporation had complied with the statute. [2] "An allegation of compliance with the statutory conditions for doing business is not necessary in a complaint by a foreign corporation. If it does not appear on the face of the complaint that plaintiff has not complied with the statute, such want of capacity to sue cannot be raised by demurrer." (7 Cal. Jur. 212; *Redding etc. Min. Co.* v. *National Surety Co.,* 18 Cal. App. 488 [123 Pac. 544]; *Bernheim Distilling Co.* v. *Elmore,* 12 Cal. App. 85 [106 Pac. 720]; *Lincoln County Bank* v. *Fetterman,* 170 Cal. 357, 359 [149 Pac. 811]; *South Yuba Water Co.* v. *Rosa,* 80 Cal. 333, 336 [22 Pac. 222].) The statutory provisions under consideration in the foregoing cases did not declare a contract, executed by a foreign corporation without compliance with the statute, to be void as does the statute under discussion, but the underlying principle is the same. It is a disputable presumption "that the law has been obeyed."

(Code Civ. Proc., sec. 1963, subd. 33.) "Under some statutes prohibiting foreign corporations from doing business until they have complied with the requirements imposed by such statute, any contracts made without having complied with the statutory provisions are held to be absolutely void, and the statute is enforced no matter how harsh its provisions may be." (Thompson on Corporations, 2d ed., sec. 6707.) "In actions by a foreign corporation that has complied with the statutory provisions for doing business it is not ordinarily necessary for it to allege in its complaint such compliance nor is it necessary to prove the same as a condition precedent to its right to sue. In an action by a foreign corporation to enforce a contract made with a domestic citizen, the presumption is, in the absence of evidence to the contrary, that it complied with the local laws giving it authority to enter into the contract." (Id., sec. 6728.) The foregoing rule is in accordance with the weight of authority. (14a C. J. 1358.) Where a contrary rule is followed it has been held that unless the fact of the compliance of a foreign corporation with our state law is put in issue by a demurrer to the complaint, or by answer, it is waived. (*Valley Lumber etc. Co.* v. *Driessel*, 13 Idaho, 662 [13 Ann. Cas. 63, 68 [15 L. R. A. (N. S.) 299, 93 Pac. 765]; *Gem State Lumber Co.* v. *Sheldon*, 38 Idaho, 651 [224 Pac. 79].)

[3] It is contended that the contracts are unauthorized by law and therefore void. One of the duties of boards of supervisors is "to equalize assessments." (Pol. Code, sec. 4041, subd. 15.) "The board of supervisors of each county must meet on the first Monday of July in each year, to examine the assessment-book and equalize the assessment of property in the county. It must continue in session for that purpose, from time to time, until the business of equalization is disposed of, but not later than the third Monday in July." (Pol. Code, sec. 3672.) "The board has power, after giving notice in such manner as it may, by rule, prescribe, to increase or lower the entire assessment-roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said roll, and make the assessment conform to the true value of such property in money." (Pol. Code, sec. 3673.) "Boards of supervisors are creatures of the statute, and the authority for any act on their part must

be sought in the statute. But while their jurisdiction is confined within the statutory limits, still it includes not only the powers expressly enumerated, but also those implied powers which are necessary to the exercise of the powers expressly granted, except in the instances where such implied power is expressly or impliedly prohibited. In the exercise of their powers, supervisors are necessarily endowed with a large discretion.'' (7 Cal. Jur. 449.) "The board must be held to be invested with considerable discretionary power in determining what information is essential to its intelligent action, and in such matters the courts may not properly interfere unless it is apparent that the service contracted for has no possible relation whatever to a proper discharge of its functions.'' (*Skidmore* v. *West,* 186 Cal. 212, 219 [199 Pac. 497, 500].) "The board of supervisors has a right to employ persons to assist in the performance of the duties that devolve upon the supervisors; for instance, to employ a superintendent of the county hospital and of the poor farm, and other persons, to enable them to discharge their many duties as supervisors, which it is not intended they should perform personally.'' (*Forward* v. *County of San Diego,* 189 Cal. 704, 709 [209 Pac. 993].) In *Skidmore* v. *West, supra,* it was held that the supervisors had power to employ persons to make "an examination of certain records in certain county offices, the state surveyor-general's office, and the United States land office, with relation to the parcels of real estate sold to the state for taxes delinquent prior to the year 1912, which covered a period of many years, and a report thereon to the supervisors with their recommendations as to further disposition, accompanied by lists for authorization from the state controller for sale by the tax collector, . . . for the information of the board of supervisors, with a view to further proceedings by them.'' In *Maurer* v. *Weatherby,* 1 Cal. App. 243 [81 Pac. 1083], the contract under consideration was the employment of the plaintiff by the city council of Eureka to furnish "an abstract of the assessment-roll of the city of Eureka, with various comparisons with the county assessment-roll of Humboldt County, California, and with maps, and other data and information, showing a gradual raise in such properties as may be deemed undervalued in their present assessed valuations. . . . These maps, data, and information are to

be of such character as will aid the council, as such, and as sitting as a board of equalization, in equalizing the assessment-roll and the taxation of the properties in the city of Eureka.'' The court, in holding the contract valid, said: ''Boards of equalization cannot increase an assessment unless they have evidence before them justifying such increase. (*Oakland* v. *Southern Pac. Co.*, 131 Cal. 230 [63 Pac. 371].) When an assessment is too high the taxpayer may be depended upon to furnish the evidence upon which they may act in reducing it. But if there is an undervaluation, the assessor having recorded his best judgment on the face of the assessment-roll, we have no doubt that the board may call to its aid such maps, abstracts, data and information as will enable the members to act fairly, intelligently and legally in equalizing assessments. They are not limited to information and data the assessor may be able or willing to furnish.''

Respondent relies upon the case of *Forward* v. *County of San Diego, supra,* which held invalid the provision of section 4041b of the Political Code, providing for the appointment by boards of supervisors of advisory boards to co-operate with county assessors in making annual appraisements of real property for taxation purposes. It was held that the effect of such appointment would be to increase the compensation of the county assessor after his election and during his term of office, contrary to section 9 of article XI of the constitution. It was also held that the statutory provision is violative of section 5 of the same article, in that it delegates to the supervisors the power to increase the compensation of the assessor at their discretion. The decision is inapplicable to the facts of the instant case. The data contracted to be furnished was for the purpose of enabling the supervisors intelligently to perform their duties as a board of equalization. It is true that the assessor may make use of such data in assessing property during succeeding years, but he may likewise make a similar use of any adjustment made by the board in the equalization of assessments, whatever the data may be upon which such adjustment may be made. It may be presumed that the assessor will be guided by the adjustments made by the board rather than by the data upon which such adjustments are based.

It must be held that the supervisors did not exceed their powers in entering into the contracts in question. As said in *Skidmore* v. *West, supra* (page 220) : "With the question of the wisdom of this contract in so far as the county was concerned, and especially with regard to the method and amount of compensation provided, the courts have nothing to do, in the absence of a claim of fraud or mistake. There is no pretense of any such claim in this matter. The question in this proceeding is simply one as to the *power* of the board."

All of the facts alleged in the petition were expressly admitted to be true by the respondent at the hearing and his counsel stated: "The only question I am interested in is the question of law."

The judgment is reversed, with direction to the trial court to enter judgment in favor of petitioner as prayed for in the petition.

Plummer, J., and Hart, J., concurred.