[Sac. No. 4943. In Bank.—July 22, 1936.]

C. E. SKIDMORE, Respondent, v. COUNTY OF AMADOR, Appellant.

Ralph W. McGee, District Attorney, and Allen L. Martin, District Attorney, for Appellant.

Frank L. Guerena for Respondent.

THOMPSON (R. L.), J., *pro tem.*—The County of Amador has appealed from a judgment which was rendered against it in a suit for declaratory relief under the provisions of section 1060 of the Code of Civil Procedure, determining the validity of a contract with the respondent to search the records and report to the board of supervisors of that county taxable property which had wrongfully escaped a levy therefor, and to pay a stipulated price for such services. It is claimed the contract is void for the reason that it purports to authorize payment to the respondent for services which the law requires the county assessor and other officers to perform.

The contract employing C. E. Skidmore was by resolution duly adopted by the board of supervisors of Amador County. It provides in part:

"Be It Resolved that C. E. Skidmore be and he is hereby employed and directed to search for and discover said unassessed taxable property. In the performance of that duty he shall examine, or cause to be checked, the tax records of the County of Amador, the records of the Auditor and Recorder of said County, the records of the United States Land Office, and the records of the Controller and the Department of Finance of the State of California. Upon discovery by him of any such property he must report it to the Board and to the County Assessor with sufficient description and detail concerning the escape so that it may be thereupon and thereafter assessed. . . . All expenses of every kind incurred in the conduct of said search and in the performance of said duties by C. E. Skidmore shall be borne by him. His compensation shall be an amount equal to all of the taxes assessed against said discovered property, including any delinquency penalties or accruals, for the first two tax years for which that property is assessed following said discovery and report, and an amount equal to one-half of all of the taxes assessed against said property, including any delinquency penalties and accruals, for the next two tax years immediately succeeding. Said compensation shall be payable only when said taxes, in whole or in part, are paid to the county, and shall be due within thirty days from the time when such payments are made to the county."

The trial court adopted findings and rendered judgment holding that the preceding contract is valid and enforceable. From that judgment the County of Amador has appealed.

■ The chief contention of the appellant is that the contract is void for the reason that it authorizes the payment of compensation to the respondent for services which the law imposes upon the county assessor by the provisions of section 3628 of the Political Code. That section provides in part:

"The assessor must, between the first Mondays in March and July of each year, ascertain the names of all taxable inhabitants, and all the property in said county subject to taxation, except such as is required to be assessed by the state board of equalization and must assess such property to the persons by whom it was owned or claimed, or in whose possession or control it was, at twelve o'clock meridian of the first Monday in March next preceding; . . . "

It is true that a board of supervisors may not contract to pay others for services required by law to be performed by the officers of the county. (*Skidmore* v. *West*, 186 Cal. 212 [199 Pac. 497] ; *House* v. *Los Angeles County*, 104 Cal. 73 [37 Pac. 796].) By the terms of the preceding section the assessor must "ascertain the names of all taxable inhabitants, and all the property in said county subject to taxation". But the means of ascertaining what property is subject to taxation is provided by section 3629 of the Political Code. It is there said that "The assessor must exact from each person a statement, under oath, setting forth specifically all the real and personal property not exempt from taxation owned by such person, or in his possession, or under his control. . . . "

It is apparent that a taxpayer may negligently or wilfully refrain from disclosing in his affidavit property owned or controlled by him which is subject to taxation. The law does not impose on the assessor the duty of further investigation or require him to go beyond the affidavits of taxpayers to discover the oversight or wilful omission to list his taxable property. It does not require the assessor to search the records of the auditor and recorder of the county, or of the United States land office, or of the controller and the department of finance of the state in order to discover unlisted taxable property. Such an intricate and far-reaching procedure, requiring the skill of an expert, may be deemed to

be an unreasonable imposition on the assessor, which would infringe on his time and prevent him from performing his usual official duties. Nor are any of the other duties referred to, which are imposed by law upon other county officers, covered by the explicit terms of the contract in question. The board of supervisors was therefore authorized to contract with the respondent to perform that service in consideration of reasonable compensation therefor.

In construing similar contracts of boards of supervisors for the employment of expert services to secure data and to report to the boards information derived by search of the county records, the United States land office, the records of the state controller and the state department of finance to aid the board in the performance of its duties, it has been uniformly held that such services do not fall within the official duties prescribed by law on the regular county officers, and that the boards therefore are authorized to make binding contracts with other individuals therefor. (*Skidmore* v. *West, supra; Skidmore* v. *Dambacher,* 6 Cal. App. (2d) 83 [43 Pac. (2d) 1110]; *Harris* v. *Gibbins,* 114 Cal. 418 [46 Pac. 292]; *H. D. Haley & Co.,* v. *McVay,* 70 Cal. App. 438 [233 Pac. 409]; *Couts* v. *County of San Diego,* 139 Cal. App. 706 [34 Pac. (2d) 812].)

■ It is the duty of the boards to "supervise the official conduct of all county officers . . . and particularly those charged with the assessing . . . of the public revenues; to see that they faithfully perform their duties, . . . ; to examine and audit . . . the accounts of all officers having the care, management, collection or disbursements of moneys belonging to the county, . . . " (Sec. 4041.2, Pol. Code.) The boards of supervisors are also required annually to "examine the assessment book and equalize the assessment of property in the county". (Sec. 3672, Pol. Code.) Also it is provided the board "may direct the assessor to assess any taxable property that has escaped assessment, . . . " (Sec. 3681, Pol. Code.) These, and other duties of boards of supervisors, required by law, which cannot be personally performed by its members, authorize the boards to employ aid in securing the data and information upon which they may reasonably act. If the boards must supervise the conduct of officers, require an accounting of all moneys belonging to the counties, examine assessment books, equalize assessments and enforce

the assessment of taxable property which has been inadvertently or wilfully relieved from taxation, how may they procure the information upon which to act, unless they are authorized to employ expert aid in securing the necessary facts?

In the case of *Harris* v. *Gibbins, supra,* the court sustained a claim for services of an accountant employed by the supervisors at the request of the grand jury. Speaking of the powers of the board to employ aid to secure information for its benefit to aid it in the performance of its official duties, the court there said:

"The foregoing provisions of the law fully warranted the board to employ the services of the petitioner in order to obtain the information necessary to enable it to discharge the duties enjoined on it in the matter of the supervision of county officers, . . . The county government act requires many things of the supervisors which they could not wholly accomplish personally, or do manually with their own hands. It is difficult to conceive how a board of supervisors in its capacity as a body corporate and politic, could expert books, or be an expert accountant; and yet the experting of books seems to be necessary to that supervision of county officers which the law expressly imposes upon such board. Power to accomplish a certain result, which evidently cannot be accomplished by the person or body to whom the power is granted without the employment of other agencies, includes the implied power to employ such agencies; and in such case, when the law does not prescribe the means by which the result is to be accomplished, any reasonable and suitable means may be adopted."

In determining whether a board of supervisors is authorized to employ expert aid to secure information for its benefit in the performance of its official duties, it has been held that the board is vested with considerable discretion. (*Skidmore* v. *West, supra; H. D. Haley & Co.* v. *McVay, supra.*)

In the case of *Skidmore* v. *West, supra,* in upholding the validity of a contract of the board of supervisors employing an expert to perform practically the same duties which are involved in the present agreement, and wherein nearly every contention was advanced by that respondent to the petition for a writ of *mandamus* which is urged on the appeal, the court said:

"It [the contract] appears to be confined, . . . to an examination of certain records in certain county offices, the state surveyor-general's office, and the United States Land office, with relation to the parcels of real estate sold to the state for taxes delinquent prior to the year 1912, which covered a period of many years, and a report thereon to the supervisors with their recommendations as to further disposition, accompanied by lists for authorization from the state controller for sale by the tax collector. *And this was for the information of the board of supervisors, with a view to further proceedings by them.* The county officers involved were those of the tax collector, the county auditor, and the county recorder. We find no statute enjoining upon any of these officers the duty to make in their respective offices the examination and report thus called for, even if called upon by the supervisors to so do. An examination of the statutes prescribing their duties fails to disclose anything that can fairly be so construed. . . .

" . . . It cannot be doubted that the board of supervisors had the power to obtain such information as was reasonably essential to a proper discharge of these functions, even to the extent of contracting for the furnishing thereof at the expense of the county, if it was not the official duty of some county officer to furnish the same, for it is well settled that a board has such powers as are necessary to the discharge of duties imposed by law. . . .

"It has been suggested here that certain sections of the Political Code other than section 4041 enjoin upon certain county officers the duty to make reports which would furnish some of the required information. Consideration of those sections has satisfied us that this may not fairly be held. . . . It seems to us an undue strain of any of the sections. to which reference is made . . . to find therein authority for the proposition that in contracting for the work called for, the supervisors included work within the scope of the lawful duty of any county officer to perform."

For the foregoing reasons, and on authority of the last-cited case, the judgment is affirmed.

Waste, C. J., Shenk, J., Langdon, J., Curtis, J., and Pullen, J., *pro tem.*, concurred.